(March 21, 2008)

■ In the Matter of PARISH A., Respondent, v JAMIE T., Appellant. [853 NYS2d 795]—

It is hereby ordered that the order so appealed from is unanimously reversed on the law and facts without costs, the petition is denied, the amended cross petition is granted and the matter is remitted to Family Court, Lewis County, for further proceedings in accordance with the following memorandum: Petitioner father commenced this proceeding in February 2006 seeking primary physical custody of the parties' two children, and respondent mother filed a cross petition in which she sought permission for the parties' children to relocate with her to Albany, but she thereafter filed an amended cross petition in which she sought permission for the children to relocate with her to North Carolina. The mother contends on appeal that Family Court erred in granting the petition and in sua sponte granting the father sole custody of the children as well, and instead should have granted her amended cross petition. We agree with the mother. We note that, although the order recites that the father "shall have sole physical custody of the children," in its underlying decision the court states that the father is awarded "sole custody" and, to the extent that there is a discrepancy between the order and the decision, the latter controls (*see Matter of Edward V.*, 204 AD2d 1060 [1994]).

Pursuant to the parties' judgment of divorce, the parties agreed to equal joint physical custody of their children, and both parties resided in Harrisville, New York until the mother remarried in February 2005. When the mother moved to Ravena, New York several months later as a result of her husband's employment, she agreed that the children should reside with their father in order to complete that school year,

and she exercised extensive visitation on the weekends and during school vacations. By June 2006, the relocation request of the mother had changed from Albany to North Carolina, based on a change in her husband's employment. The mother testified at the hearing on the petition and amended cross petition that she believed that the father had agreed that the children would reside with her during the 2006-2007 school year. We agree with the mother that the court's determination lacks a sound and substantial basis in the record and that she established that relocation is in the children's best interests (cf. *Matter of Jennifer L.B. v Jared R.B.*, 32 AD3d 1174, 1175 [2006]).

"In order to establish her entitlement to an order permitting the children to relocate with her, [the mother] was required to establish 'by a preponderance of the evidence that [the] proposed relocation would serve the child[ren]'s best interests' " (*id.* at 1175, quoting *Matter of Tropea v Tropea*, 87 NY2d 727, 741 [1996]). Although "no single factor should be treated as dispositive or given disproportionate weight as to predetermine the outcome" (*Tropea*, 87 NY2d at 738), "predominant emphasis [should be] placed on what outcome is most likely to serve the best interests of the child[ren]" (*id.* at 739). As the Court of Appeals has noted, "[w]hile some courts have suggested that [a parent's] remarriage or wish for a 'fresh start' can never suffice to justify a distant move . . . , such a rule overlooks the value for the children that strengthening and stabilizing the new, postdivorce family unit can have in a particular case" (*id.*). Further, "[m]ost moves outside of . . . [a] parent's locale have some disruptive effect on that parent's relationship with the child" (*id.* at 737).

Here, the court based its determination primarily on its conclusion that the relocation would have a negative impact on the children's future contact with the father. The court's findings, however, do not warrant such a conclusion. Indeed, the court found that the children's relationship with the father could be preserved despite the relocation, through regular contact by telephone and e-mail, and through visitation during the summer and school vacations. The court found that both parties would insure that the relationship between the children and the noncustodial parent would be maintained. Further, the court did not give adequate weight to the educational advantage to the children that relocation would provide, particularly to the child with a history of educational difficulties. In addition, the court did not give adequate weight to the impact of the relationship between the children and the father's live-in girlfriend, who was their art teacher. There was evidence of tension and

concern with respect to the parent/teacher "blur" in their relationship, based on the girlfriend's role as both a quasi-parent figure and the children's teacher, and there was evidence that one of the children had difficulties at school because of the relationship between the father and his girlfriend. We thus conclude that the court did not properly weigh all of the evidence in determining the best interests of the children.

As noted by the Court in *Tropea*, "there are . . . many cases where less frequent but more extended visits over summers and school vacations would be equally conducive, or perhaps even more conducive, to the maintenance of a close parent-child relationship" (*id.* at 738), and we conclude that this is such a case. It is in the best interests of the children to spend time with their father and his live-in girlfriend when school is not in session since, in our view, a better father-child relationship will be fostered with such an arrangement.

Finally, as previously noted, the court sua sponte granted the father sole custody, and we conclude on the record before us that the parties' relationship is not so acrimonious as to warrant modification of the parties' existing joint custody arrangement (*see Matter of Lynch v Tambascio*, 1 AD3d 816, 817 [2003]; *cf. Matter of Christopher J.S. v Colleen A.B.*, 43 AD3d 1350 [2007]). "It is well settled that joint custody is appropriate where[, as here,] the parents are able to communicate in a harmonious and reasonable fashion . . . [and that, under such circumstances, they] should have joint decision-making authority on issues which form a profound part of the children's lives" (*Matter of Thompson v Thompson*, 267 AD2d 516, 518-519 [1999]). We therefore reverse the order, deny the father's petition, grant the mother's amended cross petition seeking permission for the children to relocate with her to North Carolina and remit the matter to Family Court to determine an appropriate transfer date before the start of the 2008-2009 school year in North Carolina and fashion an appropriate visitation schedule. Present—Hurlbutt, J.P., Centra, Fahey, Peradotto and Pine, JJ.