Matter of Villani v Wendig (2026 NY Slip Op 00690)

Matter of Villani v Wendig

2026 NY Slip Op 00690

Decided on February 11, 2026

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 11, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., CURRAN, OGDEN, GREENWOOD, AND HANNAH, JJ.

87 CAF 25-00116

[*1]IN THE MATTER OF CHRISTINE VILLANI, PETITIONER-APPELLANT,
vRICHARD WENDIG, RESPONDENT-RESPONDENT. 

SALCEDO APPEALS PLLC, UTICA (STEVEN B. SALCEDO OF COUNSEL), FOR PETITIONER-APPELLANT. 
GERALD J. VELLA, SPRINGVILLE, FOR RESPONDENT-RESPONDENT.
LYLE T. HAJDU, LAKEWOOD, ATTORNEY FOR THE CHILD.
BRIDGET A. MCCUE-MARSHALL, RANDOLPH, ATTORNEY FOR THE CHILD. 

 Appeal from an order of the Family Court, Cattaraugus County (Deborah J. Scinta, R.), entered January 10, 2025, in a proceeding pursuant to Family Court Act article 6. The order, insofar as appealed from, denied that part of the petition seeking permission for petitioner to relocate with her daughter to Florida. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: In this proceeding pursuant to Family Court Act article 6, petitioner mother appeals, as limited by her brief, from an order insofar as it denied that part of her petition seeking permission to relocate with her daughter (child) to Florida. We affirm.
Contrary to the mother's contention, we conclude that Family Court properly considered the factors set forth in Matter of Tropea v Tropea (87 NY2d 727, 740-741 [1996]) in determining that she did not meet her burden of establishing by a preponderance of the evidence that the proposed relocation is in the child's best interests, and we further conclude that the court's determination has " 'a sound and substantial basis in the record' " (Matter of Hill v Flynn, 125 AD3d 1433, 1434 [4th Dept 2015], lv denied 25 NY3d 910 [2015]; see generally Matter of Rodriguez v Young, 232 AD3d 1279, 1279 [4th Dept 2024], lv denied 43 NY3d 902 [2025]; Matter of Martin v Martin, 221 AD3d 1557, 1558 [4th Dept 2023]). "A parent seeking permission for a child to relocate with [them] has the burden of establishing by a preponderance of the evidence that the proposed relocation is in the child's best interests" (Matter of Murphy v Peace, 72 AD3d 1626, 1626 [4th Dept 2010]). "[E]ach relocation request must be considered on its own merits with due consideration of all the relevant facts and circumstances and with predominant emphasis being placed on what outcome is most likely to serve the best interests of the child" (Tropea, 87 NY2d at 739). The relevant factors to be considered include, but are not limited to, "[a] each parent's reasons for seeking or opposing the move, [b] the quality of the relationships between the child and the custodial and noncustodial parents, [c] the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, [d] the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and [e] the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements" (id. at 740-741). "[N]o single factor should be treated as dispositive or given such disproportionate weight as to predetermine the outcome" (id. at 738), and " 'a court's determination regarding custody . . . issues, based upon a first-hand assessment of the credibility of the witnesses after an evidentiary hearing, is entitled to great weight and will not be set aside unless it lacks an [*2]evidentiary basis in the record' " (Matter of Guillermo v Agramonte, 137 AD3d 1767, 1769 [4th Dept 2016]).
Here, we conclude that the record supports the court's determination that it is not in the best interests of the child to allow the mother to relocate with her to Florida, where the mother wishes to live with her fiancée. Indeed, based on the evidence adduced at the hearing on the mother's petition, the court properly concluded that the mother "failed to establish that the child's life would 'be enhanced economically, emotionally and educationally' by the proposed relocation" (Hill, 125 AD3d at 1434; see Matter of Shepherd v Stocker, 159 AD3d 1441, 1442 [4th Dept 2018]). The record establishes that the child has lived in New York her whole life, and that she had connections to the community in which she grew up, and engaged in activities that were not available in Florida. The record also reflects that respondent father owns his own business and home, whereas the mother does not own her own home and has not worked since 2018, when she separated from the father. Thus, there was a sound and substantial basis for the court to conclude that, economically speaking, it would be in the child's best interests to remain with the father in New York. Further, although the mother presented some evidence that the child would be emotionally enriched by moving to Florida—i.e., she had already made a few friends there—that enrichment would come at the expense of her relationship with the father, who she would not see as often, to the detriment of the child's emotional condition. In a similar vein, we note that allowing the mother to relocate the child to Florida would also separate her from her sibling—who lives with the father in New York—and that, generally speaking, "sibling relationships should not be disrupted unless there is some overwhelming need to do so," which is not the case here (Matter of Curry v Reese, 145 AD3d 1475, 1476 [4th Dept 2016] [internal quotation marks omitted]; see generally Eschbach v Eschbach, 56 NY2d 167, 173 [1982]; Salerno v Salerno, 273 AD2d 818, 819 [4th Dept 2000]). Additionally, although the mother testified that the child could receive a superior education upon relocation, "she failed to offer any proof from which [the court] reasonably could conclude that the [Florida] school system was a significant improvement over the school system in [New York]" (Matter of Hirschman v McFadden, 137 AD3d 1612, 1613 [4th Dept 2016], lv denied 27 NY3d 909 [2016] [internal quotation marks omitted]; see Matter of Jiggetts v Thomas, 237 AD3d 1573, 1574 [4th Dept 2025]).
Although the mother argues that her request for a relocation is justified inasmuch as she needs a "fresh start," away from New York, to free herself from the father's allegedly dysfunctional and harassing behavior—which she asserts severely affected her mental health—we note that the need for a fresh start, standing alone, is insufficient to warrant relocation (see Gasdik v Winiarz, 188 AD3d 1760, 1762 [4th Dept 2020]; Matter of Jones v Tarnawa, 26 AD3d 870, 871 [4th Dept 2006], lv denied 6 NY3d 714 [2006]). Further, it is unclear how relocating to Florida would, in actuality, resolve that problem inasmuch as, even if the mother moved to Florida, she would still have to communicate with the father about the child, and would still have to coparent with him. The record shows that the parents already struggle with communication while residing in the same state, and it is reasonable to conclude that removing the child to Florida would not ameliorate any problems with the parents' communication issues or their ability to successfully coparent the child.
Although the record establishes that the child has a close relationship with the mother, it also establishes that she had a good relationship with the father. The record is equally clear, however, that neither parent is very supportive of the other parent's relationship with the child. Indeed, the evidence at the hearing raised serious concerns about whether the mother would allow the child to communicate with the father if she was allowed to relocate to Florida. Moreover, the record supports the conclusion that the mother is not capable of ensuring that the child will continue to have a close relationship to the father if she relocated—for example, the amount of parenting time that she proposed for the father would be insufficient to maintain the current relationship between the child and the father (see generally Hirschman, 137 AD3d at 1613).
The mother also contends that the court erred in excluding from evidence at the hearing certain evidence relating to the father's alleged past abuse of the mother. Even assuming, arguendo, that the court erred in excluding the evidence in question, we conclude that any such error is harmless (see generally Matter of Higgins v Higgins, 128 AD3d 1396, 1397 [4th Dept 2015]; Matter of Newman v Duffy, 125 AD3d 1474, 1475 [4th Dept 2015]). Specifically, the [*3]challenged evidence relates to just one of the Tropea factors and, even if that factor weighs in the mother's favor, the other factors weigh against the conclusion that it would be in the child's best interests to allow her to relocate to Florida.
Entered: February 11, 2026
Ann Dillon Flynn
Clerk of the Court